# United States Court of Appeals for the Fifth Circuit

———————————

No. 24-11076

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

June 20, 2025

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

*versus*

BRIAN CARPENTER,

*Defendant—Appellant.*

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CR-452-1

———————————————————

Before HIGGINSON, HO, and WILSON, *Circuit Judges*.

CORY T. WILSON, *Circuit Judge*:

Following a jury trial, Brian Carpenter and Jerry Hawrylak were convicted of six counts of healthcare fraud and one count of conspiracy to commit the same. Carpenter now appeals his convictions, raising four issues, one of which we conclude has merit. Because the district court abused its discretion when it excused a juror mid-trial, our precedent requires us to vacate Carpenter's convictions and remand for a new trial.

No. 24-11076

## I.

Dr. Brian Carpenter's convictions stem from his alleged involvement in a large scheme to defraud TRICARE, the Department of Defense's health insurance program for active-duty and retired servicemembers and their dependents. The scheme was orchestrated by Britt and Matt Hawrylak, the nephews of Carpenter's codefendant Jerry Hawrylak, in conjunction with Fort Worth-based Rxpress Pharmacy. To facilitate their scheme, the Hawrylak brothers hired "sub-reps" to obtain medical information about TRICARE beneficiaries and identify doctors willing to use that information to write medically unnecessary prescriptions for compounded medications through Rxpress. Rxpress would then bill TRICARE at exorbitant rates for filling those prescriptions. Once TRICARE paid for the prescriptions, Rxpress would pay the Hawrylak brothers, who would then pay their sub-reps and the doctors and give kickbacks in various forms to the TRICARE beneficiaries. By 2015, the Hawrylak brothers had recruited more than one hundred sub-reps, as well as hundreds of doctors, and each brother had earned several million dollars from the scheme.

In 2014, the Hawrylak brothers recruited their uncle Jerry as a sub-rep because Jerry had been "in the insurance business" and "knew a lot of people, [] potentially some doctors." Jerry then attempted to recruit Carpenter, a podiatrist at the University of North Texas (UNT), to begin writing prescriptions. Carpenter initially refused because "he didn't believe it was legal for him to get any money" for writing prescriptions. At the Hawrylak brothers' request, Jerry made a second overture to Carpenter, proposing that Carpenter write prescriptions for TRICARE beneficiaries without receiving payment. This time, Carpenter agreed to do so for TRICARE patients Jerry referred to him, as "a way to help veterans"; he also agreed to route the prescriptions through Rxpress.

No. 24-11076

Carpenter kept copies in his office of every prescription that he wrote, separated into two categories: those written for TRICARE beneficiaries and those written for his clinical patients. More than half of the prescriptions Carpenter wrote for TRICARE beneficiaries were for patients purportedly living at the same addresses as other patients, and nearly half of the patients bore the same last name as other patients. Ninety-three percent of the TRICARE prescriptions that Carpenter wrote listed Jerry's fax number.

The prescriptions that Carpenter wrote for TRICARE beneficiaries were extremely profitable for Rxpress, the Hawrylak brothers, and Jerry. Indeed, from Carpenter's prescriptions alone, the Hawrylak brothers made at least "a couple million dollars," and Jerry made approximately $1.3 million. At some point, Jerry asked Britt Hawrylak for money to give to Carpenter for writing prescriptions, and Britt gave Jerry between six and eight thousand dollars to be paid to Carpenter "for all of the scripts he was signing."

In September 2019, Carpenter and Jerry were indicted on six counts of healthcare fraud and one count of conspiracy to commit healthcare fraud. They jointly proceeded to trial and were each convicted on all counts in April 2023. Carpenter timely noticed this appeal, and a motions panel expedited the appeal at his request.

## II.

Carpenter contends that his convictions should be vacated because the district court (A) misapplied Federal Rule of Evidence 106 in its evidentiary rulings; (B) impermissibly limited cross-examination of the Hawrylak brothers and excluded expert testimony regarding the benefit they received in return for their cooperation with the Government; (C) abused its discretion by admitting a prescription that Carpenter wrote for Jerry personally, in violation of Federal Rule of Evidence 404(b); and (D) erred by

No. 24-11076

dismissing a seated, sworn juror after the first day of trial.  We address each of these issues in turn.

## A.

At trial, the Government introduced ten excerpts from a two-hour recorded conversation between Britt and Jerry in October 2016.  In one excerpt, Jerry was recorded saying, "I can account for all the money I gave [Carpenter]."  That clip was admitted into evidence and played for the jury without objection.  The Government relied upon that statement as the only direct evidence that Carpenter received money for writing prescriptions for TRICARE patients.  But the jury did not hear parts of the conversation in which Jerry denied more than a dozen times having ever paid Carpenter any money, including one statement by Jerry in which he clarified that "[Carpenter's] money's all accounted for. [H]e didn't get any f---ing money. So he's clear.  He didn't get no money."

When the Government initially moved to admit its selected excerpts at trial, Carpenter neither objected nor sought admission of the full recording.  Likewise, the defense did not object or move to admit either the entire recording or any exculpatory excerpts when the Government played the specific excerpt that included Jerry's inculpatory statement during Britt's trial testimony.  Instead, the defense cross-examined Britt on the unadmitted portions of the two-hour conversation.  For instance, the defense asked without objection whether, "in the entirety of that tape, Jerry is multiple times denying ever paying Dr. Carpenter."  Britt responded, "He said that a couple of times, yes, sir."  The defense then moved on to another topic from Britt and Jerry's discussion.  At that point, the Government lodged an unspecified objection, and the court held a sidebar, which included the following exchange:

No. 24-11076

> DEFENSE: I'm trying to avoid under the rule of optional completeness offering in this entire two-hour tape. So I'm just trying to get through some questions. I mean, otherwise, we can do it in a couple minutes or we can do it in two hours.
>
> GOVERNMENT: So the rule of completeness under, I believe it's [Federal Rule of Evidence] 106 only applies if it's necessary context. The Fifth Circuit is very clear on that. And [the defense] has not established that any of this is necessary to contextualize any of the clips that the Government admitted. Everything else is self-serving hearsay.
>
> THE COURT: What's the context that you think it's warranted under optional completeness?
>
> DEFENSE: The context is the fact that . . . . you've got multiple denials on the part of Jerry Hawrylak about ever paying Dr. Carpenter, but they want to offer a single snippet during the—
>
> THE COURT: Unfortunately, that fits with the case law, too. So I haven't heard enough that it overcomes the case law to let it in. The Fifth Circuit just says it stays out as self-serving hearsay. So I apologize, but I've got to stick to the circuit.

After the court sustained the Government's objection, the defense resumed its cross-examination of Britt, going "clip by clip" through the Government's admitted excerpts. Again contrasting the incriminating clip with Jerry's denials, the defense was permitted to ask: "[I]n [the Government's excerpt], Jerry is saying that he can account for [all the money he gave Carpenter], which, when you look at this and it's all these denials he gives you, it was none, right? He never gave any money to [Carpenter]." Britt responded, "I can't answer that question. We talked about that, I think, in previous conversation. I never saw Jerry give [Carpenter] money. . . . I have no confirmation that he gave [Carpenter] money."

No. 24-11076

Irrespective of the testimony elicited by the defense, Carpenter contends that the district court abused its discretion by excluding the remainder of the two-hour recording based on a misapplication of Federal Rule of Evidence 106. At the time of Carpenter's trial, Rule 106 "partially codifie[d] the common law rule of completeness" and provided:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.

*United States v. Herman*, 997 F.3d 251, 263 (5th Cir. 2021) (quotation marks omitted) (quoting Fed. R. Evid. 106 (2011)).[1] Rule 106 "allows the admission of such statements even when they are otherwise barred by the hearsay rules." *United States v. Portillo*, 969 F.3d 144, 176 (5th Cir. 2020) (citation omitted). But the Rule "requires the introduction of a writing or recorded statement only when the omitted portion is 'necessary to qualify, explain, or place into context the portion already introduced . . . .'" *Herman*, 997 F.3d at 264 (quoting *United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996)). "[I]t does not permit a party to introduce writings or recorded

---

[1] At the time of trial, there was a circuit split as to whether Rule 106 applied regardless of other rules of evidence, such as the rule against hearsay. *See* Michael A. Hardin, Note, *This Space Intentionally Left Blank: What to Do When Hearsay and Rule 106 Completeness Collide*, 82 Fordham L. Rev. 1283, 1307 (2013) (describing the circuit split). But our court explicitly held in *Portillo* that Rule 106 operates independently from the rule against hearsay. 969 F.3d at 176. In the months after trial in this case, the circuit split was resolved consistent with *Portillo* when Rule 106 was amended to codify that holding. *See* Fed. R. Evid. 106 (as amended December 1, 2023) ("If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time. *The adverse party may do so over a hearsay objection.*" (emphasis added)). Rule 106 was also amended to extend to oral statements, in addition to written and recorded statements, thereby fully displacing the common law rule of completeness in federal courts.

No. 24-11076

statements to affirmatively advance their own, alternative theory of the case." *Id.* (citing *Branch*, 91 F.3d at 731).

"We review a district court's evidentiary rulings for abuse of discretion subject to harmless error analysis." *United States v. Johnson*, 943 F.3d 214, 220 (5th Cir. 2019). "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *Portillo*, 969 F.3d at 168. "[F]or any of the evidentiary rulings to be reversible error, the admission [or exclusion] of the evidence in question must have substantially prejudiced [the defendant's] rights." *United States v. Sanders*, 343 F.3d 511, 519 (5th Cir. 2003).

Carpenter argues that the district court misapplied our court's precedent in concluding that the remainder of the recording was inadmissible under Rule 106 because parts of the recording violated the rule against hearsay. *See* Fed. R. Evid. 802. The Government rejoins that Carpenter failed to preserve this issue because he failed to move for admission of either the entire recording or any exculpatory excerpts during the sidebar with the court on the issue, or at any other point during trial. The Government maintains that the district court could not have abused its discretion by denying a motion that was never made.

Assuming, without deciding, that Carpenter preserved the issue,[2] we have little trouble concluding that the district court misapplied controlling Fifth Circuit precedent in ruling that the recording "stays out as self-serving hearsay." At the time of Carpenter's trial, our case law had established that

---

[2] Whether Carpenter's rule of completeness argument is preserved turns on whether the defense's argument during the sidebar was effectively a motion for admission under Rule 106. For purposes of this appeal, we elide that issue and assume that the defense's statements about the rule of completeness as it pertained to the recording were sufficient to raise and preserve the issue.

No. 24-11076

statements that "are otherwise barred by the hearsay rules" remain admissible under Rule 106. *Portillo*, 969 F.3d at 176.

But even when "the district court erred in its evidentiary ruling, the error can be excused if it was harmless," meaning that we may excuse "any error, defect, irregularity or variance that does not affect substantial rights." *United States v. Nguyen*, 504 F.3d 561, 571 (5th Cir. 2007) (quotation marks and citations omitted); *see also* Fed. R. Crim P. 52(a). "The [G]overnment bears the burden of proving beyond a reasonable doubt that the error was harmless." *Nguyen*, 504 F.3d at 571 (quotation marks and citations omitted).

Based on the record before us, the district court's misapplication of Rule 106 in this case was harmless. The defense was permitted to cross-examine Britt regarding the remainder of the recording. And Britt confirmed that he lacked any personal knowledge as to whether Carpenter was ever paid and conceded that Jerry had repeatedly denied ever paying Carpenter. Even after the district court decided that the full recording "stays out as self-serving hearsay," the defense was permitted to cross-examine Britt "clip by clip," asking him about Jerry's repeated denials that he ever paid Carpenter for writing prescriptions. Carpenter's assertion of error distills down to the jury's not being allowed to hear for itself Jerry's denials, in his own voice, during the recorded conversation with Britt. But the defense was able to elicit that information—to "place into context" Jerry's inculpatory statement, *Portillo*, 969 F.3d at 176—through testimony, such that Carpenter's substantial rights were not affected by the exclusion of the recorded statements. *See United States v. Abroms*, 947 F.2d 1241, 1250 (5th Cir. 1991). Because the district court's misapplication of the rule of completeness was harmless, there is no reversible error as to this issue.

No. 24-11076

## B.

Carpenter next argues that the district court violated the Sixth Amendment's Confrontation Clause by limiting his cross-examination of the Hawrylak brothers. Relatedly, he also contends that the court abused its discretion by excluding expert testimony regarding the Sentencing Guidelines ranges applicable to the Hawrylak brothers given their cooperation with the Government.

The constitutional question of whether a district court violated the Confrontation Clause is reviewed *de novo*. *United States v. Roussel*, 705 F.3d 184, 193 (5th Cir. 2013). "Once the Confrontation Clause . . . has been satisfied, limitation of cross-examination is reviewed for abuse of discretion." *Id.* at 194. We review the district court's exclusion of a proposed expert witness for abuse of discretion. *See United States v. Quintanilla*, 114 F.4th 453, 474 (5th Cir. 2024).

Because "[a] defendant's right to cross-examine witnesses against him is a constitutional right secured by the Confrontation Clause," a court's "discretionary authority to limit the scope of cross-examination comes into play only after the defendant has been permitted, as a matter of right, sufficient cross-examination to satisfy the Sixth Amendment." *United States v. Davis*, 393 F.3d 540, 548 (5th Cir. 2004). "The Confrontation Clause is satisfied where defense counsel has been allowed to expose the jury to facts from which the jury 'could appropriately draw inferences relating to the reliability of the witness.'" *Id.* (quoting *United States v. Restivo*, 8 F.3d 274, 278 (5th Cir. 1993)). "To demonstrate an abuse of discretion, the defendant must show that the court's limitation on cross-examination was clearly prejudicial." *Id.* "That is, the defendant must show that a reasonable jury might have had a significantly different impression of the witness's credibility if defense counsel had been allowed to pursue the questioning." *Id.*

No. 24-11076

At trial, Carpenter sought to expose the Hawrylak brothers' potential bias by asking them about the sentencing reduction they would receive due to their cooperation with the Government. Specifically, Carpenter wished to have the jury hear that the Hawrylak brothers' Sentencing Guidelines ranges would be reduced by nine years as a result of their cooperation. Carpenter also proffered an expert to explain the calculation of that reduction under the Guidelines.

The district court limited Carpenter's ability to cross-examine the Hawrylak brothers on that subject to the following "approved questions":

1.    Did you admit to conduct in your factual resume the [G]overnment could have charged you with but didn't?

2.    Do you know the maximum term of custody under the statute that you would have faced [if] you were convicted of that conduct?

3.    Would the statutory maximum for your uncharged conduct be higher than the statutory maximum for what you pled to? Significantly higher?

The district court stated that it would allow "reasonable follow-ups" and recognized that the defense could ask the questions in a leading form during cross-examination. Yet the district court flatly prohibited any discussion of the Guidelines and excluded the defense's proffered expert.

In this case, the district court's limitations on Carpenter's cross-examination do not run afoul of the Confrontation Clause; nor do they constitute an abuse of discretion. For similar reasons, the exclusion of Carpenter's proffered Guidelines expert does not amount to an abuse of discretion.

Though the defense was prohibited from questioning the Hawrylak brothers about their understanding of the Guidelines, the defense was able to

No. 24-11076

elicit that they received significant sentencing benefits for their cooperation as Government witnesses. Indeed, Britt testified that: he entered a "plea agreement" that "caps [his] maximum sentence at five years"; the Government did not charge him with every crime supported by his factual resume; he could have faced a higher sentence based on his uncharged conduct; additional charges could have entailed "significantly higher penalties"; he was cooperating with the Government; and the Government had "sole discretion to determine whether or not [he] ha[d] provided substantial assistance" warranting a sentencing reduction. Matt testified similarly, confirming that he had "a lot of incentive" to cooperate with the Government.

The jury was thus aware that the Hawrylak brothers were cooperating with the Government by testifying against Carpenter and were receiving leniency in exchange. Put differently, the defense successfully "elicited sufficient testimony" from which the jury could "infer [their] bias." *Roussel*, 705 F.3d at 194 (citing *Restivo*, 8 F.3d at 278). For that reason, coupled with the fact that the district court instructed the jury that the brothers had testified in exchange for charging and sentencing benefits, such that their testimony should be received with caution, the district court's parameters on Carpenter's cross-examination do not run afoul of the Confrontation Clause. *See Restivo*, 8 F.3d at 278. Moreover, because Carpenter was able to adduce evidence of significant sentencing benefits the Hawrylak brothers received as a result of their cooperation—*inter alia*, less prison time and lower penalties—he fails to show prejudice due to the district court's curtailing questions about the Guidelines themselves.[3] Therefore, he fails to show an

---

[3] We express no opinion as to whether it is advisable for district judges to script or otherwise sharply delimit the impeachment questions that the defense can ask of

No. 24-11076

abuse of discretion in the court's ruling.  *See id*; *see also Davis*, 393 F.3d at 548; *Roussel*, 705 F.3d at 194–95.  And because Carpenter fails to show that the district court's prohibition on discussion of the Guidelines was an abuse of discretion, he likewise fails to show that the district court's exclusion of his expert, whose sole purpose was to interpret the Guidelines for the jury, was erroneous.

## C.

Carpenter also maintains that the district court violated Federal Rule of Evidence 404(b) by admitting evidence of a personal prescription that Carpenter wrote for Jerry, which was routed through Jerry's personal insurer, not TRICARE.  We review the district court's decision to admit that evidence for abuse of discretion.  *Johnson*, 943 F.3d at 220.

Rule 404(b) prohibits "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  FED. R. EVID. 404(b)(1).  But "[i]f evidence is intrinsic, it simply does not implicate the requirements of Rule 404(b)."  *United States v. Watkins*, 591 F.3d 780, 786 (5th Cir. 2009).  "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged."  *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990) (citation omitted).

During trial, the Government offered into evidence a prescription that Carpenter wrote for Jerry in August 2015.  That prescription was "nearly identical" to the prescriptions Carpenter wrote for TRICARE beneficiaries

---

cooperating witnesses regarding the charging and sentencing benefits they may receive for their testimony.

No. 24-11076

"with the exception of the insurance that was billed." The defense objected to the prescription's admission under Rule 404(b). The district court overruled the objection, finding that the prescription, written "smack in the middle of the conspiracy," was intrinsic to the fraudulent scheme and was therefore not barred by Rule 404(b).

We discern no reversible error. Given the prescription's similarity to the TRICARE prescriptions Carpenter wrote, Jerry's integral involvement in the conspiracy, and the timing of the prescription, the district court did not abuse its discretion by admitting the prescription as intrinsic evidence. *See United States v. Brown*, 553 F.3d 768, 789–90 (5th Cir. 2008).

## D.

Carpenter last contests the district court's dismissal of a seated juror after the first day of trial. He maintains that the juror was not "unable" to continue her jury service under Federal Rule of Criminal Procedure 24(c) and that the district court dismissed the juror without a legally relevant reason or a factual basis for doing so.

Mid-morning during the first day of trial, after the jury had been sworn and empaneled and the Government had begun its case-in-chief, the district court "flagged" for counsel that

> when we picked our jury yesterday, [the court] did not excuse the teacher for undue hardship. She didn't tell us there couldn't be a sub. Her principal emailed in this morning saying that she's the only seventh grade math teacher, and they take the STAAR test[4] . . . four weeks from now, and that having her out for two weeks will put them in a bind.

_____

[4] The State of Texas Assessments of Academic Readiness ("the STAAR test") is the state's standardized testing program based on curriculum standards in core subjects,

No. 24-11076

The court asked the parties to advise the court after the lunch recess of their positions on excusing the juror, stating that "we can act on it at the end of the day if we decide to excuse her. Or [the court] can tell the principal, so sorry, but we decided not to." Trial resumed.

"[A]fter discussion during . . . lunch," both defendants objected to excusing the juror. The district court overruled the objection, and the district judge explained his decision to excuse her:

> If I heard this [during *voir dire*], I would have excused her. . . . [G]iven that we're early on in the trial—
>
> . . . .
>
> But what I plan to do is not excuse her until the end of the day because if we have some sort medical emergency with another juror, like I would like to know as much as I can. . . . I will hold her back and excuse her on the record once we're done at the end of the day.

When trial recessed that afternoon, the district court excused the juror, telling her:

> Your principal has filed an appeal with me to get you back into the classroom. And she's giving you great reviews and that the students need you for the STAAR test prep. So based on that, [the court is] going to excuse you from service on this jury.
>
> [The court] thank[s] you for paying attention. . . . [T]hank you for not begging and pleading in jury selection yesterday. . . .

From the trial transcript, the juror barely spoke and never offered any reason why she could not perform her duties as a juror.

---

including mathematics. *See All about the STAAR Test*, TEXAS EDUCATION AGENCY, https://www.texasassessment.gov/staar-about.html (last visited June 20, 2025).

No. 24-11076

After the jury delivered its verdict, Carpenter again raised the district court's excusing the juror in his post-trial motion for acquittal and for a new trial. The court denied relief, succinctly stating that "Carpenter has made no case for prejudice from this decision, nor can he."

Once a jury is empaneled, Rule 24(c) allows a trial court to replace "any jurors who are unable to perform or who are disqualified from performing their duties." FED. R. CRIM. P. 24(c). Distilled down, those duties are "simply to sit through the trial and listen to the evidence," and "after the close of the evidence . . . to deliberate and reach a decision." *United States v. Huntress*, 956 F.2d 1309, 1313 (5th Cir. 1992), *cert. denied*, 508 U.S. 905 (1993). This court's precedent frames the Rule 24(c) inquiry this way: "[T]he trial judge, in his sound discretion, may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform [those duties] is impaired." *United States v. Rodriguez*, 573 F.2d 330, 332 (5th Cir. 1978) (quoting *United States v. Smith*, 550 F.2d 277, 285 (5th Cir. 1977)); *cf. United States v. Nelson*, 102 F.3d 1344, 1349 (4th Cir. 1996) ("A defendant has a reasonable expectation that, barring unforeseen circumstances, he will be tried by the jury selected. The trial [court] is not at liberty to interfere with the jury selected unless it has adequate cause.").

The standard for dismissing seated jurors under Rule 24(c) is thus more stringent than the standard applicable to the decision to excuse prospective jurors during *voir dire*. Before selection, a member of the *venire* may be dismissed based on "undue hardship or extreme inconvenience," 28 U.S.C. § 1866(c), and district courts have "broad discretion" to weigh that determination, *United States v. Snarr*, 704 F.3d 368, 383 (5th Cir. 2013). But after their selection, jurors may be excused only if "unable to perform or . . . disqualified from performing their duties." FED. R. CRIM. P. 24(c); *accord Rodriguez*, 573 F.2d at 332.

No. 24-11076

We will not disturb the district court's exercise of discretion in dismissing a juror under Rule 24(c) "absent a showing of bias or prejudice to the defendant, or to any other party." *Rodriguez*, 573 F.2d at 332 (citations and quotation marks omitted). However, our court's precedent adds a stiffening presumption that "prejudice is found 'if the juror was discharged without factual support or for a legally irrelevant reason.'" *United States v. Pruett*, 681 F.3d 232, 247 (5th Cir. 2012) (per curiam) (quoting *United States v. Virgen-Moreno*, 265 F.3d 276, 288 (5th Cir. 2001)); *see also Rodriguez*, 573 F.2d at 332.

In this case, the district court did not make any finding that the dismissed juror was "unable to perform" her duties under Rule 24(c).[5] Nor did the court find that the juror's "ability to perform" was "impaired" in any way. *Rodriguez*, 573 F.2d at 332. Instead, the court indicated that because it would have excused the juror for "undue hardship" had it received the school principal's email during *voir dire*, it would dismiss her after the first day of trial on the same basis. This suggests that the district court looked not to whether the juror was "unable to perform" as Rule 24(c) requires but rather to whether jury service would impose an "undue hardship or extreme inconvenience" under § 1866(c). To the extent the district court conflated the two standards, doing so was error.

What can be divined from the record indicates that the juror was not "unable to perform" at all. When the district court first raised the principal's email with the parties, the court noted that one option was to "tell the principal, so sorry, but we decided not to" excuse the juror. When the court later decided to dismiss her, it nonetheless kept her on the jury until the end

---

[5] The second ground for dismissal articulated in Rule 24(c), when a juror is "disqualified from performing [her] duties," is not at issue.

No. 24-11076

of the day, holding her in reserve in case another juror had to be excused because of "some sort of medical emergency"—indicating that the court would not have excused her had another juror actually become unable to serve or disqualified from serving. And when the court finally excused the juror, it suggested that she had in fact been performing her duties: The court thanked her "for paying attention" and "for not begging and pleading" to be excused during *voir dire*. This record undermines any implicit finding that the juror was unable to serve within the confines of Rule 24(c).

Still, we will not overturn the district court's dismissal of a juror "absent a showing of bias or prejudice to the defendant." *Rodriguez*, 573 F.2d at 332. "Prejudice occurs in these circumstances when a juror is discharged without factual support or for a legally irrelevant reason." *Huntress*, 956 F.2d at 1312. Here, there is at least arguably a factual basis to have excused the juror at issue—her school principal communicated to the court that the juror's absence would "put [her school] in a bind." And in one instance, this court has affirmed a district court's Rule 24(c) discretion to excuse a juror when the factual basis for doing so was drawn not from the juror himself but from his employer. *United States v. Dumas*, 658 F.2d 411, 413 (5th Cir. Unit A Oct. 1981), *cert. denied*, 455 U.S. 990 (1982). The *Dumas* juror was employed by the United States Army, and the Army represented that he was "urgently needed to perform a fuel inspection at a U.S. Air Force base in California." *Id.* This court found no abuse of discretion because the district court "was clearly satisfied that the juror . . . was urgently needed by his employer and *unable to serve under the terms of Rule 24(c).*" *Id.* (emphasis added). Even then, this court cautioned that district courts "must carefully consider the excusal of any juror," because "excusals for insubstantial reasons would not be tolerated." *Id.*

Here, by contrast, the district court made no finding that Rule 24(c)'s terms were met, and nothing in the record indicates that the juror was herself

No. 24-11076

unable to perform her duties or was impaired in doing so.  In fact, the court necessarily recognized that the juror *was* able to perform when it kept her on for the rest of the day to ensure that there would be enough jurors in the event of a "medical emergency with another juror."  Without more, the court's broadbrush factual basis of "undue hardship"—and that, only on the part of the juror's employer—risks opening the "the flood gates for any juror to elevate employment responsibilities above the duty to serve as a juror." *Dumas*, 658 F.2d at 413.

More importantly, endorsing such an approach risks collapsing Rule 24(c)'s standard into the more deferential review of a trial court's discretion during *voir dire*, contrary to both the rule's express requirements and our precedent.  And even if *Dumas* were not distinguishable as we have described above, it rests on legally questionable footing  because it appears to have misstated, and perhaps misapplied, *Rodriguez*, decided three years before.  The *Rodriguez* panel said that prejudice "would include discharge of a juror for want of any factual support, or for a legally relevant reason."  573 F.2d at 332.  *Dumas* flipped that standard from a conjunctive rule to a disjunctive one, stating that "[f]actual support *or* a legally relevant reason must exist for such a dismissal of a juror."  658 F.2d at 413 (emphasis added).

Perhaps as a result, the *Dumas* panel focused only on whether hardship to the juror's employer sufficed as a factual basis for excusing the juror there and failed to address at all whether the factual basis for excusing the juror at issue supported a legally relevant reason for the dismissal.  While our court has not precisely demarcated what constitutes a "legally relevant reason" for dismissal, our controlling case law points back to the grounds articulated in Rule 24(c).  That is, we have affirmed dismissal of a juror when the district court's factual basis for doing so substantiated the juror's inability

No. 24-11076

to perform his or her duties—*e.g.*, to listen to the evidence at trial, deliberate with fellow jurors, follow the court's instructions, or render a fair verdict.[6]

Against that backdrop, it becomes apparent this case is an outlier. Nothing in the record even implicitly supports that this juror was impaired or unable to perform her duties. *See Rodriguez*, 573 F.2d at 332; *Huntress*, 956 F.2d at 1313. Even less ties the juror's ability to perform her duties to her *employer's* hardship, even assuming the hardship was undue. In other words, neither the juror nor her employer provided any evidence that her absence from work would distract her from her juror duties. Certainly, the juror disclosed nothing of the sort, either when she was selected in *voir dire*, or when she was excused after the first day of trial. Because no legally relevant reason is apparent from the record, it was Rule 24(c) error to excuse the juror. And our precedent compels the conclusion that "prejudice is found," *Pruett*, 681 F.3d at 247 (quoting *Virgen-Moreno*, 265 F.3d at 288), such that the

---

[6] *See, e.g.*, *United States v. Ayelotan*, 917 F.3d 394, 404 (5th Cir. 2019) ("The juror slept through witness testimony; misrepresented this fact to the district court when asked; didn't understand, or else didn't follow, the jury instructions; and didn't deliberate."); *United States v. Edwards*, 303 F.3d 606, 629–32 (5th Cir. 2002) (juror lied to the court and disobeyed court instructions); *United States v. Ebron*, 683 F.3d 105, 128 (5th Cir. 2012) (same); *United States v. Leahy*, 82 F.3d 624, 629–30 & n.5 (5th Cir. 1996) (partially deaf juror could not deliberate, refused to discuss case in deliberation, could not hear "significant amounts of testimony," and "could not follow the conversations in the jury room" due to hearing impairment); *Huntress*, 956 F.2d at 1313 (juror's "diagnosis of mental incapacity" rendered him incapable of "perform[ing] the function required of him" as a juror); *United States v. O'Brien*, 898 F.2d 983, 986 (5th Cir. 1990) (juror's "physician verified that he was in no condition to continue as a juror" due to mental incompetency); *Virgen-Moreno*, 265 F.3d at 287–88 (juror "sent a note to the district judge," requesting "to be excused for the remainder of the day because she was having difficulty concentrating as a result of three deaths of family members and friends during the week"); *Pruett*, 681 F.3d at 247–48 (juror was not capable of making it to trial due to verified transportation issues); *Rodriguez*, 573 F.2d at 332 ("[W]hen a juror is absent from court for a period sufficiently long to interfere with the reasonable dispatch of business there may be a 'sound' basis for his dismissal.").

No. 24-11076

district court abused its discretion in dismissing the juror in this case.[7] Accordingly, we vacate Carpenter's convictions and remand for a new trial. *See United States v. Ramos*, 801 F. App'x 216 (5th Cir. 2020) (vacating and remanding due to lack of factual basis for juror dismissal).

## III.

The district court did not reversibly err in its evidentiary rulings challenged by Carpenter on appeal.  To the extent there was error, *e.g.*, in the court's application of the rule of completeness, the error was harmless.

But the district court abused its discretion by dismissing a juror after the jury was seated and trial was underway without any finding that she was unable to serve for a legally relevant reason.  Because our precedent provides that prejudice "is found" in such circumstances, we VACATE Carpenter's convictions and REMAND for a new trial.

---

[7] We must acknowledge that this presumed prejudice rule, which has become entrenched in our court's case law, is circular and seems to require a finding of prejudice whenever a district court errs in applying Rule 24(c).  *See Rodriguez*, 573 F.2d at 332 (introducing the concept that "[p]resumably as here used 'prejudice' would include discharge of a juror for want of any factual support, or for a legally irrelevant reason").  More troubling, merging harmlessness analysis into the Rule 24(c) analysis is in tension with Federal Rule of Criminal Procedure 52(a).  *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").  It also overlooks the commonsense truth that, here, alternate jurors were identically situated, and Carpenter has not explained what prejudice followed from an alternate's continued participation in the excused juror's stead.  Importantly, the jury had not yet begun to deliberate when the juror was excused.

No. 24-11076

Jᴀᴍᴇѕ C. Hᴏ, *Circuit Judge*, dissenting:

I would affirm the conviction. The district court did not abuse its discretion by dismissing the juror in question from jury service.

Under Federal Rule of Criminal Procedure 24(c), a district court "may . . . replace any jurors who are *unable to perform* . . . their duties." Fᴇᴅ. R. Cʀɪᴍ. P. 24(c) (emphasis added). So "it is within the trial judge's sound discretion to remove a juror." *United States v. Dumas*, 658 F.2d 411, 413 (5th Cir. 1981). And this discretion "is not to be disturbed absent a showing of bias or prejudice to the defendant." *United States v. Rodriguez*, 573 F.2d 330, 332 (5th Cir. 1978). Prejudice is found when a juror is dismissed without factual support or for a legally irrelevant reason. *Id.*

Brian Carpenter alleges legal error. He contends that the juror at issue here was in fact able to perform her duties—it's just that she happens to be a school teacher, and the court chose to defer (wrongly, he says) to a plea from her principal that, during the particular timeframe in question, her students had a special need for her to be in the classroom, rather than in a courtroom.

Respectfully, I do not see how these facts take this case outside the plain meaning of the term "unable to perform" under Rule 24(c). Imagine that you're asked to attend a parent-teacher conference at your child's school. But you say that, unfortunately, you're "unable" to attend. When pressed, you explain that your boss needs you to be at work that day. Could the school respond that you're a liar? Surely not. Tellingly, counsel for Carpenter conceded during oral argument that this hypothetical involves a "permissible" use of the word "unable." Oral Arg. at 7:56–9:00.

Moreover, it's not just a permissible reading of Rule 24(c)—it's precedential. In *Dumas*, the district court dismissed a juror after his employer "wrote a letter . . . requesting that the juror be excused because he was scheduled to be out of town on the day the trial was to commence" "to

No. 24-11076

perform a fuel inspection at a U.S. Air Force base in California."  658 F.2d at 413.  We found "no abuse of discretion in th[e] determination" that "the juror who was dismissed was urgently needed by his employer and unable to serve under the terms of Rule 24(c)."  *Id.*

The same logic applies here.  The teacher in this case was also "urgently needed" in her classroom.  And here as in *Dumas*, the district judge chose to credit that concern.  As the majority acknowledges, the district judge noted that the juror's "principal emailed in this morning saying that she's the only seventh grade math teacher, and they take the STAAR test four weeks from now, and that having her out for two weeks will put them in a bind."  I see no principled basis for distinguishing this case from *Dumas*.

Moreover, this conclusion is further reinforced by our decision in *Rodriguez*.  The juror in *Rodriguez* simply "chose[] to go to work that day rather than to come to court."  573 F.2d at 332.  There was no "urgent need" by an employer in *Rodriguez*, as there was in either *Dumas* or this case.  Yet the district court replaced the juror anyway.  And we affirmed.

So if the replacement of a juror was within the discretion of the district court in *Rodriguez*—and we're duty-bound to conclude that it was—then it's *a fortiori* within the discretion of the district court here.

\* \* \*

I appreciate the concern that decisions like *Dumas* and *Rodriguez* could "open the flood gates for any juror to elevate employment responsibilities above the duty to serve as a juror."  *Dumas*, 658 F.2d at 413. But as *Dumas* instructs, Rule 24(c) entrusts district judges to make that determination:  "Trial judges must carefully consider the excusal of any juror, and excusals for insubstantial reasons would not be tolerated."  *Id.*

I would affirm the conviction and thus respectfully dissent.